HENRY C. ADAMS *vs.* PETER FOX &c., impleaded with Lawrence M. Fox.

An attorney, claiming a lien upon the judgment, for costs, and who brings an action against his client to recover the amount, cannot, (when collusion is not charged) make the judgment debtor a party with a view of having the amount declared a lien upon the judgment. ALLEN, J. dissented.

The lien which an attorney is said to have on the judgment is merely a claim to the equitable interference of the court to have that judgment held for his debt. It is confined to the costs of the particular suit, and does not, *it seems*, constitute the attorney an assignee of the judgment, in such a sense as to entitle him to go into another court to enforce his lien by action in his own name. *Per* MORGAN, J.

The attorney, by virtue of his lien on the judgment, may take the money *in transitu*, if he can lay hold of it. If he applies to the court it will prevent the money being paid over till his demand is satisfied. If the judgment debtor pays the judgment to the judgment creditors, after notice of the lien, the court may require him to pay it again, to the attorney. This is a power which the court exercises towards its officers and suitors already within its jurisdiction. *Per* MORGAN, J.

APPEAL from an order of the special term, overruling the demurrer of Peter Fox, one of the defendants. The plaintiff's complaint charged that Lawrence M. Fox recovered a judgment against Peter Fox, the executor of Archibald Fox deceased, on the 24th day of July, 1862, for $1862.24, besides costs. The costs as taxed amounted to $681.83. Total, $2570.34. The suit was brought by Peter Fox, the executor, against Lawrence M. Fox, and the judgment was for the demands which Lawrence M. Fox established against Peter Fox by way of counter-claim. The case was tried twice before a referee, and occupied a long time. It involved many important questions, and was before the court on several occasions. The plaintiff was the attorney of Lawrence M. Fox and performed valuable services, besides expending some money in the defense of the action. The complaint avers that all these services were rendered upon the express request of Lawrence M. Fox, and upon the agreement that the plaintiff should be paid for the same out of the avails of the judgment, so much as the services were reasonably worth, of which

Peter Fox, the executor, had due notice. The complaint then avers that such services, disbursements and expenses were, in consideration of the promises aforesaid, so rendered by the plaintiff as the attorney and counsel of Lawrence M. Fox, and were worth the sum of $1500. And that Lawrence M. Fox is indebted to him for the same, together with the interest thereon from the day of the rendition of the judgment. The complaint then avers that by reason thereof "the plaintiff became the equitable assignee of and acquired a lien upon the counter-claim and demands of said Lawrence M. Fox involved in said suit, and that immediately upon the rendition of said judgment he became the assignee of and acquired a lien upon the judgment aforsaid," of which Peter Fox, executor, had due notice. The plaintiff then claimed that Lawrence M. Fox owes him a balance of $106.95 for his services and expenses in a trover suit brought by *Peter Fox*, the executor, against *Lawrence M. Fox*, and that it was expressly agreed that the plaintiff should recover his pay out of the avails of the judgment in question. He then avers that he is the equitable assignee of and acquired a lien on, the judgment, in respect to this balance. It is then averred that Lawrence M. Fox, being a resident of this state, departed from it with intent to defraud his creditors, and is now a resident of Michigan. The plaintiff claims judgment against Lawrence M. Fox for the sum of $1606.95, besides interest, and for a decree declaring such judgment a lien upon the judgment recovered by Lawrence M. Fox against Peter Fox, executor, to the extent of the judgment to be obtained in this action against Lawrence M. Fox. There is no allegation of collusion between Lawrence M. Fox and Peter Fox, executor, to deprive the plaintiff of the benefit of his attorney's lien.

*H. B. Cushney*, for the appellant, cited 1 *Barb. Ch.* 98; 2 *Paige*, 896; 15 *How. Pr. Rep*, 176; 4 *Barb.* 47, and 18 *N. Y. Rep*. 868. He claimed that the action would not lie against Peter J. Fox, either for the purpose of determining

the amount of the plaintiff's lien, or enforcing the lien, whatever it may be : That the lien of the attorney only extended to the taxable costs, in the absence of an agreement stipulating the amount of compensation, and that his lien could not be extended to include services performed, and expenses incurred, in other suits.

*H. C. Adams,* in person, claimed that he was the equitable assignee of, and had a lien on, the judgment, for the amount he should establish against Lawrence M. Fox, whether the sum depended upon an agreement or upon a *quantum meruit.* This has been expressly adjudicated in this very case, (24 *How. Pr. Rep.*409.) That was a motion for the purpose of obtaining the very relief sought by this action, and it was *held* that the action for that purpose must be against all parties. (*Bockes, J. p.* 418.)

MORGAN, J. The amount of the compensation to which the plaintiff is entitled as attorney and counsel in the original action was not stipulated between the attorney and his client ; and as the amount is disputed by the party (Lawrence M. Fox) it was doubtless proper that it should be ascertained in an action at law. There is some question whether the lien of the attorney ought to be protected beyond the taxable costs, (*Haight* v. *Holcomb,* (16 *How. Pr. Rep.* 173,) or the amount stipulated as compensation between the attorney and client. (*Rooney* v. *Second Avenue R. R. Co.,* 18 *N. Y. Rep.* 368.) It would be an extraordinary proceeding to tie up the collection of the judgment until the attorney could go into a court of law and recover another judgment against his client fixing the amount of his compensation in the original suit. There is no precedent for such a proceeding, and I shall not consent to aid in establishing it. Still I think it is a matter of discretion with the court in which the judgment is obtained, whether they will interfere to stay its collection or not. Upon an affidavit showing the amount claimed, the court of

king's bench in one case directed so much of the judgment as would be necessary to pay the same to be brought into court to await the taxation of the attorney's bill.   So here, it was competent for the attorney in the original action, after judgment, to apply to the court to protect his lien; and I think the court could interfere and direct a sufficient sum, proceeds of the judgment, to be brought into court to await an action at law between the attorney and client to settle the amount. But there is no authority for making the costs of other suits a lien upon this judgment.   And it should be a clear case which would justify the court in which the judgment is obtained in detaining the funds until the attorney had time to sue his client and obtain another judgment for his costs. The court, I think, may refuse it in all cases.   It is said, *per Curiam,* in *Barrett* v. *Barrett,* (8 *Pick.* 343,) "This is a question addressed to the discretion of the court."   But I see no reason why the court does not possess the power in such cases, as well as when the compensation is stipulated. The client might deny the agreement, and then an action at law or a reference would become necessary before the court could know what sum should be paid over to the attorney.

In the case at bar there was no agreement as to the amount of the compensation; but it is alleged that the attorney was to be paid his fees, expenses, &c. out of the claims which entered into the judgment.   The amount being disputed, it was suggested by the learned judge who gave the opinion in *Fox* v. *Fox,* (24 *How.* 417,) that there was "no difficulty in settling the amount and having it declared a lien on the judgment.   If there be no short way of accomplishing this, there remains the usual way by direct action for that purpose."   I have examined a great many cases in this country and England, and have not yet found one where such an action was brought for such a purpose.  I think this is an experiment under the code, and that there is no necessity whatever for such an action.   The court in which the judgment is obtained may doubtless direct the proceeds, sufficient for that purpose,

to be brought into court until an action is brought to determine the amount of the attorney's lien, when such an action is necessary. This affords all the protection proper in any case.

I conclude, therefore, that Peter Fox, the executor, against whom the judgment was obtained, is an unnecessary party to this action, and that the plaintiff has an adequate remedy against him in the original action. The defendant here, Peter Fox, has done nothing to justify an action against him, and ought not to be harassed with another suit in which he can have no adverse interest. His position is that of a neutral, unless he pays the amount in his own wrong after notice of the lien. It may be that an execution cannot issue against the executor without the order of the surrogate; but when issued, it is under the direction and control of this court. There is nothing in the complaint to show that the executor has attempted to collude with the judgment creditor to cheat the attorney out of his costs, or that there is any special reason for invoking the assistance of a court of equity to give effect to the lien. Nor am I prepared to admit that the lien is of such a character as to lay the foundation for another suit in equity to enforce it.

I do not propose to enter into a discussion of its origin—but all the cases in this country and England treat it as an equitable claim to be protected in the court in which the judgment is obtained—a claim to the equitable interposition of the court, which the court may exercise towards its officers and towards parties already within its jurisdiction. The plaintiff in the case at bar, calls himself the *assignee* of the judgment by virtue of his lien for costs. But this claim is not strictly correct and cannot be acceded to without considerable explanation and qualification. In *Martin* v. *Hawks*, (15 *John.* 407,) Spencer, J. in discussing the question, speaks of the attorney as one who " stands in the same equity as he would have done had the judgment been assigned to him." Justice Greene, in delivering the opinion of the court in *Sherwood* v. *The Buffalo and N. Y. City R. R. Co*, (12 *How.*

Adams *v.* Fox.

*Pr. Rep.* 189,) calls it a claim in the nature of a lien. In *Reed* v. *Duffee*, (6 *T. R.* 362,) Lord Kenyon, Ch. J. observed: " This lien has been likened to an *assignment* of a chose in action, which in strictness cannot be done." In *Platt* v. *Jerome*, (19 *How. U. S. Rep.* 334,) the court refused to protect the attorney as an *assignee* of the judgment, in respect to his lien for costs. Mr. Justice Nelson, who delivered the opinion of the court, says: " No doubt if either party had *assigned* his interest to a third person, by which such third person had become possessed of the beneficial interest, and the party to the record merely nominal, the court would protect such interest and give him the control of the suit. * * * The attorney, however, even if he has a lien on the judgment *according to the course of proceedings in the court where it was recovered*," stands in a different situation. It was said by Park, B. in *Barker* v. *St. Quintin*, (12 *Mee. & Wels.* 451,) " The lien which an attorney is said to have on a judgment, (which is perhaps an incorrect expression) is merely a claim to the equitable interference of the court to have that judgment held for his debt." And he remarks: " The attorney is not the *dominus litis* so as to marshal the proceedings on the judgment or the execution as he may think fit." And this definition of an attorney's lien was again adopted by the court in *Hough* v. *Edwards*, (37 *Eng. Law and Eq. Rep.* 470.)

The attorney may take the money *in transitu* if he can lay hold of it. If he apply to the court they will prevent its being paid over till his demand is satisfied. (*Lord Mansfield, in Welch* v. *Hale*, 1 *Doug.* 287.) If the defendant pays the judgment to the plaintiff after notice of the lien, the court may require him to pay it again to the attorney. (*Reed* v. *Duffee, supra.*) When, however, the amount given on settlement of a suit was by way of gratuity to the plaintiff who was a widow, and the amount was small (£150) the court refused to give effect to the attorney's lien. (*Stretton* v. *The London and N. W. Railway Co.*, 16 *Com. B. R.* 40.)

This lien is totally different from the lien upon tne papers. The lien on the judgment is confined to the costs of the particular suit, and the attorney can actively enforce it. The lien on the papers is merely a right to retain them, and applies to all his bills of costs. (*Bozon* v. *Bolland*, 4 *Mylne & Cr. Ch. R.* 354, 357.) All these cases, as well as others reported in the books, as far as my observation goes, were in the same court in which the judgment was obtained. Several of them were in the king's bench and common law side of the exchequer, where the right of set-off is subject to the lien of the attorney, while in this state the lien is holden to be subject to the equitable claims that exist between the parties to the suit. (*People* v. *N. Y. Common Pleas*, 13 *Wend.* 649.) When the supreme court was without equity jurisdiction, it could not be tolerated that the court of chancery should take cognizance of a bill in equity to administer the funds which the plaintiff recovered in a court of law, merely for the sake of enforcing the attorney's lien for costs. The judgment is under the control of the court in which it is obtained, and the attorney must apply to that court to protect his lien, instead of bringing an equity suit in another court; otherwise different and conflicting orders might be obtained in relation to marshaling the funds as between the several claimants.

In my opinion the theory of the complaint cannot be supported without engrafting a new principle into the administration of justice; but as far as it seeks to recover judgment against the defendant Lawrence M. Fox, the allegations are sufficient.

But in order to maintain an action against the defendant *Peter Fox*, it is at least necessary to allege that he claims an interest adverse to the plaintiff. (*Code*, § 118.) And it would seem that the nature of the claim should be stated. (*Van Santvoord's Pl.* 156.) There being no cause of action stated, as against him, the demurrer should be sustained. (*Id.* 671. 2 *Kern.* 580.) As a suit in equity it cannot be supported. The order overruling the demurrer should be

reversed, and judgment given for the defendant Peter Fox, with leave to the plaintiff to amend on payment of costs.

MULLIN, J. delivered on opinion coming to the same result.

BACON, J. concurred.

ALLEN, J. dissented.

Order reversed.

[ONONDAGA GENERAL TERM, December 22, 1863. *Allen, Mullin, Morgan* and *Bacon,* Justices.]